All right, counsel, your honors, good morning, and may it please the court. I'm David Shank, and together with Chris Cradiville, I represent the relators in this matter. This case presents the court with several important and unresolved questions of law concerning the proper management of putative class actions, the promotion of merits-based settlement, and the role of the appellate courts in assuring both of those things. I think it's useful to begin with the text of the operative rule as it's developed over the course of a couple decades to address all of these things. Federal Rule 23 c1a mandates that the trial court must determine whether to certify a class action at an early, practicable time. The rule also provides for immediate interlocutory appeal of any decision to certify a class, and this court over the course of decades has provided detailed requirements governing that decision and the review of it in this court, including the requirement of a detailed trial plan that will assure the recognition of the due process rights of the available damages and a probability of success at trial. What specific order are you mandamusing? The judge's order setting a trial in the Addison case, which we believe would be inappropriate for multiple reasons. Here we have, Judge, the eighth case management order, the minute entry. What specific order are you mandamusing? The order scheduling this case, it's a, I believe it's the ninth case management order, I could be wrong on that, that sets for trial in September six individual and two family groups pulled out of the Addison case by the attorneys. We believe that that trial would be grossly inappropriate in view of the text of Article 23, the due process concerns that would obtain from holding open the potential for. Management order sets this for Tuesday, September 5th. I'm sorry, Judge. The eighth case management order sets the case for trial on Tuesday, September 5th. Is that the correct? That's, that's, that's it, Your Honor. Okay. This was an agreed order, wasn't it? I'm sorry, Judge. This was an agreed order, wasn't it? No, it was not, Your Honor. No. Where are objections filed to this order that was submitted by a joint group? Where, where did you object to this order in the case? Your Honor, we, prior to that hearing on September 9th, we proposed that the court, and we had proposed, of course, across the course of the year that the judge proceed to certification first. In fact, the class counsel did that as well. Right. Where, where is the objection in the record to this order? I believe within the week we filed a request to clarify, if not to clarify, to go to a reverse bifurcation instead, and the judge rejected that order. We had a, the problem we have, Your Honor . . . Where is that in the record? Can you tell me where in the record you objected? It looks to me that this is a joint order, and that the only things that were ever argued about have to do with Dawbert and other things that are not, that's trial setting, um, and those were resolved in a conference, so I don't see where this was ever objected to in this record before us. That's the problem, Judge. We're dealing here with a series of off-the-record conferences. But you have a responsibility as counsel to get a, to make an objection on the record to challenge a court's ruling . . . I, I believe . . . And to, or else file a motion or something in the district court so you can get a ruling. I think, I believe our counsel did that, Your Honor, twice. Well, where is that? That's what I'm asking. In advance of that order on September 9th, we proposed that the court comply with Rule 23 and move forward with certification. Where are those orders? We had the conference . . . In this record. The problem we have here today, Judge, is we have an off-the-record conference that the judge in the district court had now filed a brief in this court that indicates that there was an email after she ruled at that conference that she was not going to accept our proposal to move forward with certification first. I can assure you, my clients did not reject their own proposal. The trial court rejected that proposal and the trial court proposed and ordered us to participate in that off-the-record conference. In this trial process, we objected afterwards and said, we think the only way you could do this is a reverse bifurcation. She rejected that as well. I would think that's a sufficient record to make clear that the legal requirement that class certification be done first was not waived by us. Are these in the record? Your counsel is trying to help you, your co-counsel. Because the first thing we need to do is you need to have objected to the ruling in the trial court before we can have an appeal of it, right? Yes. Or else we have a plain error. I direct the court to the Addison Appendix at page 274 where we say defendants reserve their objections to trying any Addison plaintiff's case on the merits prior to class certification. And when was that filed? I'm sorry, when is that filed? Unfortunately, the pages are different. The 25th of April. Of this year? Yes. I'm sorry, it's page 274 of the record? Yes. Okay. Footnote four. I'm sorry, I should have had that immediately handy, Your Honor. In order for you to have mandamus, as you know, you have to show that mandamus is the only available remedy and that you will not have an opportunity at a later time to challenge the order that you're objecting to. I don't see that that requirement is met here. In other words, even if we were to decide that the district court was was flatly wrong, and I'm not saying whether we will or we won't, that doesn't get you where you want to go on a mandamus. It may get you where you want to go on an ultimate appeal. Your Honor, I disagree respectfully. We have a couple of distinctions here. One is, as seven circuits have already held, any trial on the merits in class certification violates Rule 23. The U.S. Supreme Court made that clear in the American Pipe decision. So you appeal it? Well, Your Honor, at that point, the harm is done with respect to the class certification or the class members. What would the court do on the appeal if we were victorious? Undo the verdict just because of the timing? I wouldn't think that would be an option available to the panel after the first. I would think you would be asking for that. Obviously, this is all speculative. I mean, I don't think you're precluded from asking for that on a future appeal, as distinguished from a mandamus. But the Third Circuit recently addressed this in the Citizens Bank case and did exactly what we're asking here today. And in that case, we didn't have the additional complication that we have here of the trial court explicitly holding open the potential for one-way collateral estoppel. The way this trial is currently set up is extraordinary in that we have the parties selecting the plaintiffs who will be facing us. How could there possibly be one-way collateral estoppel in this case if, since Louisiana law does not recognize one-way collateral estoppel? So are you saying that the court is not aware of no, one-way collateral estoppel doesn't apply? Well, we raised that issue with the trial court and at appendix page 537 to 544, here's what she says. Plaintiffs have not yet sought application of collateral estoppel based on the findings in the first Addison trial. Moreover, even if plaintiffs advance such an argument at this time, the court would not make a determination whether it applied to collateral estoppel. Right. Until somebody says there's collateral estoppel, when someone argues that, then you come forward with the Louisiana law that says there's no collateral estoppel. It's not the trial that hurts you, it's the ruling that there would be collateral estoppel, and we have to assume the district court would follow the law absent some understanding to the contrary. Well, Judge, we're five years into this case. And at least three and a half years of that, of delay for certification, were on your own litigation strategy, which I'm, if that was your choice, to ask for an order 18 months after the removal, after a number of motions in the removal, a motion to dismiss. You waited three and a half years to want to have certification filed. And so, but do you want to comment on that? I beg to differ. I think the record is clear that in January of 2019, we were pressing to have certification decided first. Again, in March 25th, this is an appendix 52 to 54, we were pressing to have certification decided. At that time, we said we wanted the briefing done on class certification within 91 days of the order on a decision for a motion to dismiss. Then again, on September 9th of 2019, we asked for the class certification to be proceeded with, forthwith, and to have a Why aren't you mandamusing that? If you think you should have gotten class certification and the court refused to give you a hearing on class certification, why isn't that the subject matter of the mandamus, if that's your complaint? Well, it is. We, Judge, we asked for three things on page two of our original mandamus application. The first thing we asked for is that the court be ordered to vacate this trial setting in the to class certification. And the third is that the Addison case, which is part of the class case, not be allowed to otherwise proceed since you can't have two cases. But the Manda Addison case is not part of the class case. That's where I, all the cases that you cite, that you said all these other circuits say you must have class certification first, that's, you must have class certification before proceeding in trials of the class claims, not on your other mass torts that are not part of the class. Judge, that's where you and I are going to respectfully disagree, and I'm strongly— Could you give us a case, then? U.S. Supreme Court decision in American Pipe, 1966 amendments to the rules of Rule 23. The theory going into that was that the individual cases were separate from the class case. And here's what the U.S. Supreme Court says. The filing of the putative class action, the filing of a timely putative class action, commences the action for all members of the class as subsequently determined. A federal class action is no longer an invitation, but a truly representative suit designed to avoid rather than encourage unnecessary filing of repetitious papers and motions. How could it otherwise be that the tolling period would continue as to people who are not joined in the class? There's one case. Everybody is in there. You can't have the limitations period tolling for some reason and then say, separately, I'm going to file a separate lawsuit. And in any event, this would be the second filed lawsuit. There's no dispute here that all of the Addison plaintiffs are pursuing the same injury, same mechanism of injury, same time periods, same defendants, same basic— Before we got the modern Rule 23 in 1966, as you were talking about the case that we got the rule, the concern was with one-way intervention would be that spectator putative plaintiffs could watch how the class action was going, and then if that trial succeeded, the spectators would intervene even as later as after a favorable verdict. But if the Addison trial proceeds, there is no intervention risk because if the plaintiffs win, no spectators can intervene at that point and share in the win. So there's no intervention risk that was the concern in that. If they lose, their incentive is to go file another separate lawsuit. That's the forum risk. They can watch the outcome, and it's made worse, I suggest, by the whether it's correct or it's not. This court in Chevron, an opinion written by Judge Parker and with a special concurrence by Judge Jones, which I believe is very persuasive, said just this prospect of holding out a non-mutual collateral estoppel was enough to violate the due process— But there is non-mutual collateral estoppel under Louisiana law as a matter of law. I hope you're right about that. But at this point, the trial court is telling us, take your chances. I'm not going to make a decision at this stage. And we did not agree to this process. But that doesn't mean you're indisputably entitled to mandamus if it's not even clear that the court is ruling wrong. Well, Judge, we're five years into this case. The judge is the only judge we have, and we're the litigants. We have been saying since the word go that the certification has to come first. We did that the minute that the state cases were filed, and the state judge stayed those state cases. When they were removed to federal court, we wanted to file a motion to dismiss and said certification should be done within 91— the motion should be filed within 91 days of the ruling on the motion to dismiss. We don't have a robe. We don't have a pen. We've been asking for this. The rules entitle us to it. We think depriving us of it potentially deprives us of due process, as the Chevron case would suggest. If there's any further questions, I'll take them. Otherwise, I'll reserve the balance of my time for rebuttal. Thank you, Mr. Schenke. You've saved time for rebuttal. All right. Is it Roe or Rau? It's Roe, Your Honor. Thank you. Roe? All right, Mr. Roe. Thank you. May it please the court, my name is Eric Roe. I represent the Addison plaintiffs in this case. In order for there to be a writ of mandamus, there has to be a clear and disputable right to the relief sought. In this case, they've sought the relief of postponing the trial date that was currently set for September. That's partly been achieved already by the stay order that was issued by this court. Then they've asked for the Addison trial to be postponed altogether until such time as class certification and all the appeals and all the notice periods following class certification in an entirely separate case have occurred. Do the Addison plaintiffs care whether the district court agrees with the class action in the other case? They do not, Your Honor. I mean, if they were . . . If we were to sign an order saying you need to expeditiously do this in 30 days, that doesn't affect you as long as you get your trial in your other case. That's exactly right, Your Honor, because it doesn't matter to us whether a class is certified or not certified. We brought this case five years ago. Frankly, my predecessor who brought the case didn't think there would be a class that was certified. It's one of the reasons this case was brought separately. It doesn't matter to us at all whether . . . You're not trying to jump into that other case or something if it's certified. No. It's not some . . . No, that's right. . . game that you're playing, trying to roll the dice twice or something? No. We have individual cases just like . . . Our case has well over 500 plaintiffs at this point, but it would be the same if we had one plaintiff. Our plaintiffs have brought their lawsuit, they're bringing their claims, they want to get to trial, and it doesn't matter to them whether or not there is a separate class action case going on. If a class is certified, they're opting out. They've opted out probably already just by virtue of having brought a separate lawsuit. And so what really and truly what they're asking for here, because the way that class certification stuff works . . . My friend, Mr. Shank, talked about how under the American Pipe, the filing of a class action tolls the statute of limitations. But what happens then in the class certification process is if a class is certified and a notice goes out, then all of the potential class members have an opportunity to decide whether to be in the class or not be in the class, to opt out. And if a class is denied, certification is denied, then a notice goes out, and all of the potential class members have an opportunity to decide whether at that time they want to bring their own lawsuit. And so really what we're talking about here is no more and no less than an attempt by them to say that whenever a plaintiff brings his own lawsuit, he has to wait until the statute of limitation runs on every plaintiff before he can get to trial. And that is not the law anywhere in this country. Never has been and never will be, because all litigants have a right to get to trial. But what do you say if opposing counsel, your friend on the other side, says that there is . . . the Supreme Court has said this must happen? The Supreme Court has never said this must happen. There is no case that says that when a class action is filed, it tolls the trial of every other case that might arise out of that circumstance. There is no case that said it. That wasn't said in American Pipe. It has not been said ever by any court. Is there any judicial economy reason that the court should not have trials on the other mass torts that are not in the class? I can't think of one, Your Honor, because, you know, as plaintiffs who have been injured and who are seeking redress for their injuries, when their cases have been prepared for trial, when they've conducted the discovery, when they're getting ready for trial, there's no reason not to permit those cases to go to trial. Is there a benefit to other putative class members in the . . . is it ICTEC-BENDEC? ICTEC-BENDEC, right. Um, because if your plaintiffs lose, then they'll, um, will they, the other putative class members, be in a worse position or a better position? Their, their position won't change at all. There, because . . . So there's no game benefit? There is no game benefit. Yeah, because in the, in the, in the cases that involve the one-way intervention rule, the people who are potentially members of the class can look and see what happens in the class case before deciding to take advantage of that judgment. Because Addison is a completely separate case. There is no sitting back and waiting what happens in the class action case because there's no order in the class action case to take advantage of. And so, and so whatever happens in the Addison case is not really going to affect the, the, uh, the decision to opt in or to not opt in or to . . . Now, I could give some information in the marketplace as to what potential valuations of certain plaintiff's claims might be that might foster settlement, but may not, or might not foster settlement. Right. And there, there's information that happens about cases, particularly in cases like this that are highly publicized, where the defendants themselves have gone to the newspapers and to the TV stations and talked about the case, and where there's a public entity involved, where there's a public interest in the case. Of course, there's going to be public . . . But, but just as a matter of law . . . Right. And, and if it were the, if it were the law that, uh, airing of the evidence in the case by itself was a reason to postpone a case that was ready for trial because of some effect on some other case, then, you know, then the, what it would do is it would violate Rule 1 of the Federal Rules of Civil Procedure. Has the mandamus been filed in both cases, cross-filed in both cases, or . . . It was filed in both cases, yes, Your Honor. That, I'm just . . . And, and the principal relief that they were asking for was the postponement of the Addison trial until after all of the class certification things happened in ICTEC-BENDEC, which means, as a practical matter, that the Addison plaintiffs who are going to be tried this fall, they're going to be lucky if they get their case tried in three years from now. And part of our problem, and part of the prejudice that's being suffered by the Addison plaintiffs, we have a large number of elderly plaintiffs in this case. We have 29 plaintiffs who have died since the case was filed. One of the plaintiffs who is being tried this fall is 79 years old. We have one of our expert witnesses is 82. We have lawyers who are up in years. And so, if, if we have to wait to try the case that was being ready for trial this fall for another three years, we may have a different trial team. We may have different plaintiffs. We may have new representatives or people who have died. Things may change. And, and there's no just reason for that because the one-way intervention rule that they're trying to shoehorn themselves into just does not apply to Addison because Addison is not a class action case. Never has been. Never will be. It is not one in Rule 23. Does not apply in Addison. So. Okay. As an officer of the court, are you aware of any case in all of America, I think you already answered this, that would say it was error to proceed with trying a mass tort when it's not part of a class? I am not aware of any case that would say it was error to proceed with the, with the trial in Addison or, or when there's multiple cases going on arising out of the same court that it would be error to proceed with the first one. I'm not aware of any such case. All right. Thank you, Mr. Rowe. Thank you. Mr. Landry. Good morning. May it please the court. Jason Landry on behalf of the ICTEC-BENDEC class plaintiffs. To add briefly to Mr. Rowe's argument, the threshold predicate for one-way intervention to apply is that a class representative's claims must be at issue and must be adjudicated. That's not present here. No class representative when the ICTEC-BENDEC was scheduled to go to trial in September under the Addison order. Are you planning to try to use the Addison trial for collateral estoppel purposes? No, Your Honor. And I believe we've made our... Are you allowed to do so? I don't believe so, Your Honor, under the law, under Louisiana law, as you said. But regardless of the, of whether the one-way intervention rule is even implicated under these facts, these defendants affirmatively, knowingly, intentionally, strategically, involuntarily waived any protections against one-way intervention when they pursued a dispositive ruling on the merits on every single potential plaintiff's claims, whether they be a putative class member, a named class representative, or the many hundreds of Addison plaintiffs. Is that question before us today? I believe it is, Your Honor. And that's part of our opposition is whether this one-way intervention is even implicated, they've waived it. And the case law is quite clear. When you pursue a dispositive ruling, in the cases we cited, dealt with summary judgment. Here, it was a full-blown trial on the merits. And let me back up a bit. The defendant's argument here, they've constructed this false facade, and it's based on two misrepresentations. One, that this was foisted upon, the general causation was foisted upon them involuntarily, and that two, it didn't speak to liability. Both are untrue, and the record proves it. As we cited on page 10 of our class plaintiff's brief, the judge, the trial court, in April of 2020, three years prior to them seeking mandamus, noted in a separate order for a separate unrelated motion, she recited the procedural background. And therein, she stated how it was defendants, not plaintiffs, not the court, defendants who proposed a Lone Pine case management order to put the issue of general causation up because it may be determinative of the entire litigation, meaning that it could foreclose any decision on liability, specific causation, allocation of fault, or damages. Do you have a dog in the hunt of whether these Addison plaintiffs are tried this fall or not? No, I just want the ball to move forward. So you don't, that's, that's his problem, right? Or his point? Well, not necessarily, Your Honor, because what has been done is we are doing common discovery together, and the merits discovery needs to be completed one way or another. And we're happy to go on a separate track and move the ball towards class certification, but there's no reason to delay the merits discovery. What timeline do you see for class certification in this case, and why, why shouldn't we mandamus on that issue alone that needs to be done? One, you shouldn't mandamus on that issue because they've waived the right against prohibition against one-way intervention. However, the court, in her invited response, indicated to your Honorable panel that she would enter an order asking the ICTEC-BENDET class plaintiffs and defendants to meet and confer and to propose a CMO. She did do that. Plaintiffs complied. We submitted a proposed CMO. The defendants opted not to do so. They have not participated in that endeavor. And so the judge, true to her word, was, and true to Rule 23, was going to get the ball moving on class certification while also moving Addison forward. Well, what is the ball movement? What is, when is it going to be certified? Well, we proposed that it would be certified in early 2024, I believe. We'd have the hearing by then, but the defendants said it, you know, they think it takes 15, 16 months to get it done. But again, they didn't participate. And so the judge did not enter an order. And then once the— But should we, should the court enter an order? Should the judge, because it's supposed to happen quickly, say, we, there's been enough dragging in this, and we, regardless of what party's dragging their feet, everybody needs to move forward? Well, I'd say yes, Your Honor, and she was trying to do that, but they refused to comply. So they say they want this classification to happen, and when presented the opportunity, they flat-out rejected it. What, what record citation do you have for that proposition? That, that is, since, since the briefing was, was submitted, Your Honor. And we're happy to amend and add to the, to the Addison appendix to add this, any documentation relevant. I guess I'm a little bit confused because you've gone on and about the waiver of the non-mutual collateral estuple. It seems like that's having your cake and eat it, too, somewhat, because I asked you at the beginning, and you said you're not arguing that, but then you said, oh, well, but they waived it, so we could argue that. And so the whole argument of the other side is that there is non-mutual, they, I mean— I think we're talking about two separate things.  When I, when I say they waived— We're talking about one-way intervention. When they waived one-way intervention, what I'm saying is that there's— I'm talking about one-way intervention, not mutual, not non-mutual. Correct, Your Honor. Thank you. When they waived one-way intervention, there's nothing stopping the district court to do what she did, which is say, hey, Addison, you're going to go first, and let's get class certification on the books, and let's do it. But they chose to do that. I'm sorry, Your Honor? They chose to do that. They absolutely chose to do that. One-way intervention. They absolutely chose to do that. And part of this, you heard a couple times, Mr. Schenck mentioned September 9th. And, and that's true. They submitted a letter talking about class certification. But then, September 10th, as, as the district court's April 28th, 2020 decision makes clear, during that status conference, it's, it's the defendants who proposed this Lone Pine case management order in both cases. They took a shot to dismiss all claims on the merits. That is, that's just a waiver. Flat-out waiver. And here, we can't, you know, chew gum and walk at the same time. Addison can go forward to trial, and we can get class certification set. There's, there's no issue that, that requires mandamus here. There's no abuse of discretion, abuse of power that arises to a usurpation of power that would even justify a mandamus here. And, and one issue, Your Honor, I think why they didn't comply with the judge's order to, to meet and confer and submit a class certification CMO is, part of it is they interpreted this honorable court's stay order as staying all proceedings, not only in the Addison case, but also in ICTEC-BENDEC. And so what we would ask is at least today, not only the stay be lifted, of course, but that a clarification be issued by this honorable court stating that the stay order did not apply to the ICTEC-BENDEC class action. And if the panel has any other questions? All right. One final thing, um, I believe a mandamus in this, you know, instance would, would set a very bad precedent. We have a system that discourages mandamus, it discourages interlocutory appeals. And here what you have are disgruntled parties who they had a strategic decision backfire and now they're complaining to this court to save them and rescue them from their own choices and the consequences thereof. That would turn our system on its head and it would open up the floodgates for these types of issues where what you have is sour grapes and they're, you know, grass-fed straws paid, paid the courts as abusing their inherent discretion to manage their dockets. All right. Thank you, Mr. Lane. Thank you. Mr. Sheng, Verbo. So summarize for us, uh, I know you've said a lot about it, but summarize for us in one sentence how it is that you're harmed, uh, if the Addison trial goes forward as scheduled. We are subject to the risk of a victory meaning nothing for us and a loss informing absent class members of the opportunity to go file a lawsuit elsewhere if we accept the theories on which this case is proceeding. That theory is that the Addison members are the Addison plaintiffs are not part of the class that cannot be right. If we take the, the pleadings as true, the first filed pleadings here were the class action allegations. They assert that every member of that Addison case would be within this class. I think there's no dispute about that. The American pipe decisions from the U.S. Supreme Court treats that class action as a unitary claim until the court with the protection of the early practical opportunity rules on class certification. The prospect of individuals who would be benefiting from the tolling provisions because they're already in the class case might peel out and file a later action presents the prospect for us being henpecked to death by ducks as they said in the seventh circuit in one of the cases we cited to you. Aren't they opted out as Mr. Rowe said earlier, these plaintiffs can't go into the other case there. It's too late for them. I think we cannot leave the inmates to run the asylum judge. The problem here is the judge, the trial judge inmates in the asylum. In this analogy, what I'm saying is that we have the class action pending. The trial judge is managing and monitoring that class action. If we have individuals who are within the class as it's defined, stepping out and opting out before there is a class, it will be chaos. You can file your own separate lawsuit. They can't want to. There's no rule against that. Right. And they would be the second filed actions that would bring up a second challenge that we would have to whether those cases could proceed or not on the merits. And in my view, rule 23 protects against exactly that by requiring that the class determination be made an early practicable opportunity that protects anybody who doesn't want to be in the class. They can go file. But in this case, we have two cases. They don't have to wait for the whole class action if they have their own lawsuit. No, I'm not saying that they do. I'm saying which case can be tried to the merits. That is the one-way intervention problem that the Supreme Court addressed in American Pipe as well. How could the victory mean nothing? Because these plaintiffs would be collaterally stopped. They would be stuck with whatever result they get. So it would mean if you were to succeed as you hypothesized, then these plaintiffs would get poured out, as we say in Texas, and their claims would be over forever. So it would not be a non-eventful victory. That would be six people, though, Your Honor. We're talking 400,000 people in this putative class right now. These class actions are a spectacular risk coming from our side. And to answer your question earlier, again, on the prospect of collateral estoppel, I'll point the court to, I believe it's, well, I don't have their appendix site here for it. Oh, it's from their brief, their footnote 16 from the Addison brief, where they assert collateral estoppel will apply in this court. The trial court, as I pointed out, has left that open. And Chevron opinion from this court treats that prospect in and of itself as violative of the rules. And Judge Jones has pointed out, in and of itself would create a due process problem, which is exactly where we are. So assume that you're right on everything that you've just told us on rebuttal. Let's assume that your side of the case is correct on all of those things. How and why is it that you would not have an ultimate opportunity to appeal an adverse judgment or a series of adverse judgments as to those matters? The problem is, Judge, the class case would still be going the whole time. The limitations period would still be held open. All the litigants who would be in the class, if it were eventually certified, would have the opportunity to see what happened in the same forum, same cases, same theories of liability, same injuries, and decide whether to opt in or opt out. That's exactly why Rule 23 was amended back in 1966, and why seven circuits have said we can't have a process like this. The idea that somehow, because there's two separate cause numbers, the problem goes away. It's worse, because now we've got a second filed case of people who are undeniably within the class and within the protections of Rule 23. And lastly, Judge, I should have answered your question more specifically on our objections. If you look at Appendix 171, 382, and 569, those are further objections to this proceeding. And the 10th CMO, right now, would be the operative document. Thank you. Judge Smith, if I could, just two quick questions. What is your position on the stay order being lifted to the extent it's in effect? Yes, Your Honor. Our view is, as we said, we've been pressing, and to be clear, never objected to the class certification going forward. It was the trial in Addison going forward before that. So you believe there should not be a stay on the second case? And that should be lifted right away? Given how we don't want to repeat the discovery twice. If there's going to be a trial in the Addison case, we should do the discovery once. If there's not going to be, then we obviously would proceed. OK. I don't understand the answer. So are you saying you want there to continue to be a stay in the Iktik-Bendik case while we're resolving this? Or are you saying you don't want a stay? And I'm kind of unclear why you might want to stay. Well, if the stay pending this Court's decision, we think it would be most efficient not to take the discovery twice. We do wish to proceed directly to class certification. But why would it be twice if it's just in the Iktik-Bendik case? Well, if there's going to be a trial in the Addison case, and we've done the discovery in the class case, we wouldn't want to have to come back and do it again. Does that make sense? No, because one of them is in September, and the other one is, I mean, so it's either— It's not second. That's right. So I don't understand why that would happen twice. So I don't understand your answer, but that's OK. So I say you— Our preference is to proceed on class certification and only class certification. We're here saying that the Addison trial in the interim would be inappropriate. So we shouldn't have a stay on the Iktik-Bendik case because you want to proceed in that case. Correct, correct. OK. So long as there's a prospect of another trial in September, we'd have to do that discovery as well. But then the last thing, what timeline are you asking? If you think the court has erred in not having the class certification hearing already and should have done it many moons ago, when do you propose that the court— What would we order the court to do? Would we say 60 days, 90 days, 120 days? When is it that you wish for this class certification to take place? What we proposed, I believe it was three years ago, was 90 days for the motions. Right. So what is a relevant— What is the relevant date as of today? Because we're not three years ago. Your Honor, I think the critical thing is it's not a calendar issue. It's no trials on the merits before that class certification decision is made. So you're not actually saying the class certification needs to occur any time as long as there's no trial? Well, it has to be at an early practicable time. OK. Well, that's what I thought you said. So when is practicable? I think at this stage, no more than six months from today. Six months. OK. Thank you. All right. Thank you, Mr. Schenck. Your case and all of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow.